# Klepser Bros. v. Furry.

*Trade-marks — Similarity of device — Registration — Laches — Acts of June 20, 1901, and April 24, 1905.*

1. A trade-mark for flour, consisting of a golden dove within a circle surrounded by a larger circle, within which are the printed words "Golden Dove," and duly registered under the Acts of June 20, 1901, P. L. 582, and April 24, 1905, P. L. 302, will be protected against a device identical in form and posture of the dove, and differing only in color and reading matter.

2. Differences which do not destroy the general similarity in appearance to the ordinary purchaser or user do not constitute a valid defence in an action to enjoin the use of the alleged unlawful device.

3. A plaintiff in a trade-mark injunction case cannot be charged with laches where he has proceeded promptly after having registered his two trade-marks, although he may have delayed previously in asserting his rights for several years after knowledge of the infringement.

4. Money damages will not be allowed in a trade-mark case where there is no evidence from which they can be determined, and particularly is this so where plaintiff has delayed for many years in registering his trade-mark.

Bill in equity to enjoin use of trade-mark. C. P. Blair Co., Equity Docket, No. 1078.

*John M. Klepser,* for plaintiff.

*W. I. Woodcock* and *Simon H. Sell,* for defendant.

BALDRIGE, P. J., July 29, 1926.—The plaintiff by this bill in equity seeks to enjoin the defendant from using a certain trade-mark on the ground that it is an imitation of, and an infringement upon, a trade-mark adopted by him and registered in accordance with the laws of Pennsylvania.

Klepser Bros. *v.* Furry.

## *Findings of fact.*

1. The plaintiff, a miller merchant in the City of Altoona and the Borough of Martinsburg, is, and has been since the year 1888, engaged in the manufacture and selling of flour under the brand or trade-mark of "Golden Dove."

2. The defendant, P. B. Furry, is a miller merchant of New Enterprise, Bedford County, and is now, and has been since 1893, engaged in the milling and selling of flour in Blair County, and has adopted a symbol or design for a trade-name bearing a strong resemblance to the trade-mark of the plaintiff without the plaintiff's license or consent.

3. The plaintiff had knowledge for eight or ten years that the defendant was using a trade-mark similar to his, but made no protest to the defendant until Aug. 9, 1924, when the National Trade-Mark Company of Washington, representing the plaintiff, notified the defendant of the alleged infringement upon the rights of the plaintiff.

4. On Aug. 4, 1925, the plaintiff registered in the office of the Secretary of the Commonwealth the trade-mark which it had adopted under the Act approved June 20, 1901, P. L. 582, as amended by the Act of Assembly approved April 24, 1905, P. L. 302. The trade-mark so registered was described as follows: "To consist of a golden dove, within a circle, the whole surrounded by a larger circle, within which are the words printed Golden Dove."

5. The trade-mark used by the defendant, but not registered, is a dove, identical in form and posture with that of the plaintiff, and within a circle, but it differs in color, as does also the solid background of the circle. The outer circle of the defendant's trade-mark is very similar to that of the plaintiff's, but it contains different printing matter. The general effect, although not identical, is very similar.

6. The defendant has been advertising his product in the newspaper and other mediums, but no testimony was given as to the amount expended therefor.

## *Discussion of law.*

The pleadings raise two questions: First, is there an infringement of the plaintiff's trade-mark? and, second, is the plaintiff guilty of laches?

A critical inspection and comparison of the trade-marks used by the parties to this action would disclose certain differences, but there is a very general similarity in the form, figure and appearance of these two trade-marks. Differences which do not destroy the general similarity of appearance to the ordinary purchaser or user do not constitute a valid defence in an action to enjoin unfair competition. It is contended upon the part of the defendant that the coloring and lettering of his trade-mark is so different as to readily distinguish it from that of the plaintiff. But it is not the color nor the words in the circle that give the plaintiff a special privilege. The essential characteristic is the design or figure: Lafean et al. *v.* Weeks and Company, 177 Pa. 412. In this instance, it is the dove. "While no one can have a trade-mark monopoly in color of paper or shape of label, in color of ink, or in one or another detail, a general collocation of such details will be protected against an imitation, the natural result of which is to deceive purchasers, and which must, therefore, be presumed to have been adopted with that purpose:" La Lance & Grosjean Mfg. Co. *v.* National Enameling and Stamping Co., 109 Fed. Repr. 317;  Schmick *v.* W. Reading Broom Works, 79 Pa. Superior Ct. 331;  B. V. D. Co. *v.* Kaufmann & Baer Co., 272 Pa. 240.

It is contended, further, that notwithstanding the general resemblance of these trade-marks, no one has been misled or deceived. But it is not necessary

to show that persons have actually been deceived. The office of a trade-mark is to point out the ownership of the property and is for the protection of not only the vendor but also the purchaser.

In the case of Juan F. Portuondo Cigar Mfg. Co. *v.* Vicente Portuondo Cigar Mfg. Co., 222 Pa. 116, one of the leading cases in this State, the court issued an injunction restraining the defendants from using a trade-mark, labels, etc., alleged to be an infringement upon those owned by the plaintiff. It was held that the plaintiff was entitled to his remedy, although the trade-mark, labels, etc., "were not an exact reproduction of those used by the plaintiff, but they did bear such a resemblance that the unobservant would have been misled thereby."

In Tupelo Cotton Co. *v.* American Bleached Goods Co., tried in the District of Columbia, and reported in 4 Fed. Repr., 2nd Series, page 953, which was a proceeding to cancel the trade-mark of the defendant, the appellee adopted and used a trade-mark consisting of a bird with wings outstretched, just leaving a twig, the body of the bird being red and its wings and tail black. In a circle surrounding this bird, which is said to be a representation of a scarlet tanager, are the words "Pride of the West—India Linon." The appellant adopted in 1917 a trade-mark consisting of a bird perched on twig with wings outstretched, carrying in its mouth a string from which was suspended a disk bearing the word "Tupelo." This bird was supposed to represent a blue bird. It was held there that the resemblance was such as likely to cause confusion and to create mistakes in the mind of the public, nothwithstanding the fact that the appellant contended that the two birds were readily distinguishable.

The resemblance in that case of the essential figure was not as strong as it is in the instant case. The principal object, that of a dove, in its form as well as the spread of its wings, makes an unusual figure. Placing these various samples which were offered in evidence side by side, the similarity is so marked that if they were separated the public could be readily confused, especially if they kept in mind the chief feature of the trade-mark, namely, a dove in flight against a solid background. We, therefore, hold that there has been an infringement by the defendant in the use of the trade-mark adopted by the plaintiff.

This brings us to the second question, as to whether or not the plaintiff is guilty of laches. The defendant contends that as the plaintiff, after he had the knowledge of the defendant's use of his trade-mark, was not vigilant in the protection of his rights, he, therefore, tacitly acquiesced in the defendant's use of the trade-mark adopted by him. "Laches is not to be imputed to a party for the mere lapse of time alone; it is an implied waiver arising from knowledge of existing conditions and an acquiescence in them. The question is one involving equitable principles, and is determinable from the particular facts in each case:" Hansell *v.* Downing, 17 Pa. Superior Ct. 235.

If it were not for the Act of 1901, *supra*, the plaintiff's rights would be in greater peril. But it must be borne in mind that in this case the plaintiff is proceeding under the Act of 1901, as amended by the Act of 1905, *supra*. This legislation was given careful consideration in the case of Bergner and Engel Brewing Co. *v.* Koenig, 30 Pa. Superior Ct. 618. Judge Henderson, the writer of the opinion, said: "The proprietor of the trade-mark not only has what has been frequently called a property interest therein, but there is also a public interest out of which legislative control arises. One of the reasons for the protection of trade-marks exists in the policy of encouraging trade and manufacture and stimulating the production of commodities which are accept-

Klepser Bros. *v.* Furry.

able in the market. . . . It has long been recognized as a police power of the State to protect its citizens from imposition in regard to the kind and the quality of goods they purchase, and dealers in merchandise have a right to adopt a distinguishing mark by which their commodities may be known. Legislation of this character has been enacted by the United States and by substantially all of the states and in many instances penalties have been prescribed. . . . The owner may be indirectly interested, but the penalty inflicted is for the wrong done to the public."

In Fraim Lock Co. *v.* Shimer, 43 Pa. Superior Ct. 221, it was held that penalties, which included an injunction, provided by the Act of 1901 for the wrongful use of trade-marks registered under the provisions of the act, may be enforced.

The plaintiff did not attempt to accept the benefits of this act until Aug. 4, 1925, and this bill was filed Oct. 6, 1925, so that there can be no possible question of delay after the trade-mark was registered. The fact that many years had elapsed since the plaintiff first adopted his trade-mark, and that about eight or ten years had passed since the plaintiff had first knowledge that the defendant was using a similar trade-mark is immaterial. The plaintiff adopted his trade-mark first and, therefore, his right thereto was superior to and exclusive of any right in the defendant. He was entitled to have his trade-mark registered and to the benefits afforded by so doing, which includes, as we have seen, the obtaining of an injunction. As the plaintiff proceeded very promptly after he registered his trade-mark, he is not guilty of laches, and, therefore, the second question is decided contrary to the contention of the defendant.

The prayer of the petitioner asks for damages. If the plaintiff has sustained any damages, it is due somewhat to his own inactivity before registering his trade-mark. Under all the circumstances, it would be inequitable to impose a financial penalty upon this defendant, and, in addition thereto, there is no evidence from which the amount of the penalty could be determined.

### Conclusions of law.

1. The plaintiff is the owner of, and has the exclusive right to the use of, the trade-mark as registered by him in the office of the Secretary of the Commonwealth in Harrisburg on Aug. 4, 1925.

2. That the trade-mark so registered by the plaintiff had been adopted by the plaintiff five years prior to the adoption of the trade-mark now used by the defendant.

3. That the trade-marks used by the defendant, which are termed "White Dove" and "White Wonder," are infringements upon the trade-mark of the plaintiff, known as "Golden Dove."

4. That the plaintiff is not guilty of laches and, under the Act of 1901 and its amendments, he is entitled to an injunction restraining the defendant from infringing upon his registered trade-mark.

5. That the plaintiff is not entitled to have imposed any financial penalty.

### Decree.

Now, July 29, 1926, upon the consideration of the foregoing case, it is hereby ordered, adjudged and decreed that the injunction heretofore issued be and hereby is made permanent, at the cost of the defendant. The prothonotary is directed to file this opinion and enter a judgment *nisi*, according to Equity Rules 68, 69 and 70.

From Robert W. Smith, Hollidaysburg, Pa.