## Palmer *versus* Harris.

1. The ground upon which equity restrains the counterfeiting of trade-marks is the promotion of honesty and fair dealing. No one has a right to sell his own goods as the goods of another.

2. A party attempting to deceive the public by a trade-mark containing on its face a falsehood as to the place where his goods are manufactured, that he may have the benefit of the reputation of such goods, is guilty of the same fraud of which he complains.

3. Equity will not extend its protection to one whose case is not founded in truth.

4. When a slander is uttered in a foreign tongue, it must be proved that the hearers understood the language; this rule does not apply to a libel.

5. A trade-mark in Spanish of cigars made in New York indicated that they were made in Havana. *Held*, on the ground that it was false, that an injunction would not be granted to restrain a counterfeit of the mark.

January 6th and 7th 1869. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Philadelphia:* In Equity: To January Term 1868, No. 302.

In the court below Lorin Palmer filed a bill on the 23d of August 1867 against George S. Harris. The important allegations were, that the plaintiff was a tobacco merchant in New York, and made superior cigars, known as the "*Golden Crown*," which he sold in large quantities. In the year 1858 he devised a trade-mark, to wit, a *Golden Crown*, and had labels with the mark lithographed and printed, which for his protection, he entered on the 18th of December 1858 in the office of the District Court of the Southern District of New York, in conformity with the Acts of Congress respecting copyrights: from that time this trade-mark has been used by him, and become identified with the Golden Crown cigars. The labels are used by placing a larger one inside of the cover of the cigar-box, and a smaller one over the edge of the box where the cover is opened. The defendant, who is a printer, has made and is still making a great number of counterfeit labels of the plaintiff's trade-mark for persons unknown to the plaintiff, who are using them to deceive the public and induce the belief that they mark the "Golden Crown" cigars, and thus deprive him of the exclusive use of his trade-mark; the defendant was notified to stop printing the counterfeit labels of the trade-mark, but he refused, and said he intended to continue printing and disposing of them. The prayer was that the defendant be restrained from printing and counterfeiting the plaintiff's trade-mark, &c.

Exhibit marked "A" of the genuine labels containing the trade-mark; also an exhibit of the alleged counterfeit, were attached to the bill.

The genuine labels were parallelograms, nearly square; on the

[Palmer *v.* Harris.]

smaller was inscribed "GOLDEN CROWN," below which was "L. P.," and below that "HABANA." The larger was enclosed in an ornamented border; on it were "GOLDEN CROWN;" below that, the figure of a golden crown; below that "FABRICA DE TABACOS DE LAS MEJORES VEGAS;" below that again "DE LA VUELTA ABAJO"

"Calle del AGUA No. 73 HABANA;"

and below all, and outside of the border, in very small letters, "*Ent. according to Act of Congress A. D.* 1858 *by Lorin Palmer in the c'k's office in d't c't of the S. d't of N. Y.*" There is also a government revenue stamp on the box.

The counterfeit was of the larger label, and was very similar to it, but wanting the certificate of the entry of the copyright. Affidavits and an injunction bond were filed, and a special injunction was issued.

The defendant filed his answer, admitting most of the allegations of the bill, but averring as follows:—"It is true as matter of fact, and I aver it to be so, that complainant's cigars are manufactured and sold in the city of New York, and not at the Havana, and that, therefore, the announcement upon complainant's label, Exhibit A., in the words following:—"Fabrica de Tabacos de las Mejores Vegas, de la Vuelta Abajo, Calle del Agua, No. 75 Habana," is wholly untrue, and both calculated and intended to deceive, and so being calculated and intended, is not entitled to the aid of a court of equity for its protection. That hence I submit and insist, that complainant is not entitled to the relief he seeks, and therefore I pray that his bill may be dismissed with costs."

The cause having been submitted on bill and answer, the court (Ludlow, J.) refused the injunction.

The plaintiff appealed, and assigned for error the refusal of the injunction.

*Jas. Parsons* (with whom was *J. C. Bullitt*), for appellant.—A trade-mark is a species of property: Bradley *v.* Norton, 33 Conn. 157, and entitled to protection: Burnett *v.* Phalon, 9 Tiffany, N. Y. Court of Appeals; Collady *v.* Baird, 4 Phila. 139. The owner is entitled to an injunction against an imitator; a substantial similarity is sufficient: Bradley *v.* Norton, *supra;* Coats *v.* Holbrook, 2 Sand. Ch. 586, and cases cited; Taylor *v.* Carpenter, Id. 603, s. c. in error 611; Partridge *v.* Heuck, Id. 622; Williams *v.* Johnson, 2 Bosw. 1; Stokes *v.* Landgraff, 17 Barb. 608; Amoskeag Manufacturing Co. *v.* Spear, 2 Sand. S. C. 599; Wolfe *v.* Gouland, 18 How. Pr. Rep. 64; Clark *v.* Clark, 25 Barb. 76; Brooklyn White Lead Co. *v.* Masury, Id. 416; Walton *v.* Crowley, 3 Blatch. C. C. 440.

When the trade-mark constitutes by itself a fraud upon the

[Palmer *v*. Harris.]

public, the court will not enjoin an imitator. If it appears that the plaintiff was aware of the falsity of the representation, or made the contract with his eyes open to the defect, he is remediless, for he was not deceived: Adams's Eq. 176 and note; 1 Story's Eq., §§ 191, 202–3; Eden on Injunction 27 and note 1; Broom's Maxims 358.

The assertions on the label are in a foreign language, and are presumed not to be understood; 2 Starkie on Slander 52; Cook on Defamation 14, 87. Taking out the copyright and declaring it on the label neutralized the words on the label: Casey *v*. Collier, 56 Niles's Register 262 (1839); Keene *v*. Wheatley, 6 Amer. L. Reg. 45 (1860). The internal revenue stamp states the kind, quantity and district where manufactured: Act of Congress, July 28th 1866; Statutes at Large 328 : Boutwell's Manual, §§ 91, 92, p. 51. The assertions were innocent in their effect on the public, and the court will not canvass the motive: Edelsten *v*. Vick, 11 Hare 78; Dale *v*. Smithson, 12 Abbott Pr. Rep. 237. It is only when intention is coupled with an act that it comes within the purview of jurisprudence; 2 Austin's Jurisprudence 147; Rex *v*. Scofield, Cald. 397; Rex *v*. Higgins, 2 East 5; Lindley's Juris. xxx. 2; Smith *v*. Bowler, Disney, Rep. 520–26.

Equity lends its aid to make a legal right more effectual: Farina *v*. Silverlock, 6 De G. M. & G. 214; s. c. 39 E. L. & E. 514. If the title is contested equity suspends its aid until the legal right is established: Pidding *v*. How, 8 Simons 477; Singleton *v*. Bolton, 3 Doug. 293; Perry *v*. Truefitt, 6 Beav. 66. Rodgers *v*. Nowill, 5 M. G. & Sc. 109.

A case at law by purchaser against proprietor requires false representation, knowledge of its falsity, ignorance of the purchaser, and acting upon it as if true: Sykes *v*. Sykes, 3 B. & C. 541; s. c. 5 D. & R. 292; Singleton *v*. Bolton, *supra;* Crawshay *v*. Thompson, 4 M. & G. 357; Rodgers *v*. Nowill, *supra;* Behn *v*. Kemble, 7 C. B. N. S. 260; Eden on Injunction, by Waterman, 25, note 1.

There can be no deception until somebody is deceived: 1 Stark. on Ev. 374; Adams's Eq. 176 and note; Story's Eq., §§ 191, 202–3; Broom's Maxims 358.

When the legal title is established at law, Stewart *v*. Smithson, 1 Hilt. 119, equity enforces the right: Dale *v*. Smithson, *supra;* which is vested, and can be forfeited only on legal ground. It is better fortified than the right to a contract which equity rescinds only when an action of deceit could be maintained at law: Sugden on Property, in H. of L. 597–8–9, 406–8, 64 L. L. 398–9; Sugden on Vendors 180, ch. 5, § 111, pl. 41; 204, ch. 5, § 5, pl. 3; Fry on Specific Performance, ch. xii., p. 191; xiii., 206, L. L.

*T. Cuyler*, for appellee.—Can a court of equity protect from

[Palmer v. Harris.]

pirating a trade-mark which is confessedly false? The obscurely-printed statement of the entry of the copyright did not prevent the deception. The unwary and ignorant were deceived and intended to be deceived. The court will not grant an injunction when the plaintiff has made false representations to the public as to the article seeking protection: 3 Dan. Ch. Pract. 1754, 1755; 2 Story's Eq. § 951; Perry v. Truefitt, 6 Beav. 66; Millington v. Fox, 3 M. & A. 338; Clark v. Freeman, 11 Beav. 112; Hogg v. Kirby, 8 Ves. 226; Walcott v. Walker, 7 Id. 1. Equity will not extend protection to those whose case is not founded in truth: Pidding v. How, 8 Sim. 477; Dale v. Smithson, 12 Abbott's Pr. 237.

[During the argument, Mr. Justice READ referred to Leather Cloth Co. v. Amer. Leather Cloth Co., 8 L. T., N. S. 829, V. C. Wood, June 3d 1863; 1 H. & M. 271, 32 L. J., N, S. Chan. 721; 9 L. T., N. S. 538; Ld. Westbury, Dec. 21st 1863; Hall v. Barrows, 501, 204; 33 L. J., N. S. Chan. 199; 12 L. T., N. S. 742; H. Lords, May 21st 1865; 35 L. J., N. S. Chan. 53; 11 H. Lords Cases, Clark 523.]

The opinion of the court was delivered, January 14th 1869, by

SHARSWOOD, J.—The plaintiff, according to the statements of his bill, is the manufacturer of a cigar, known as the "Golden Crown," and he has devised a trade-mark, which he uses in its sale. He charges that the defendant, who is a printer by trade, has counterfeited this mark, and sells copies of it to persons engaged in the manufacture and sale of cigars, by whom they are used to his damage. The answer of the defendant admits these allegations; but sets up as a ground for the non-interference of the court, that the articles thus sold by the plaintiff were manufactured in the city of New York, and that the trade-mark in question contains upon it the declaration that they are the product of a "factory of cigars from the best plantations de la Vuelta Abajo, Calle del Agua, Habana." The case having been heard on bill and answer, the bill was dismissed with costs.

The maxim which is generally expressed, " He who comes into equity must come with clean hands," Snell's Principles 33, but sometimes, in stronger language, "He that hath committed iniquity shall not have equity," Francis's Maxims 5, has been often applied to bills to restrain by injunction the counterfeiting of trade-marks. The ground on which the jurisdiction of equity in such cases is rested, is the promotion of honesty and fair dealing, because no one has a right to sell his own goods as the goods of another: Croft v. Day, 7 Beav. 84. "It is perfectly manifest," said Lord Langdale, "that to do this is a fraud, and a very gross fraud." It is plain that there is no class of cases to which the

[*Palmer v. Harris.*]

maxim referred to can be more properly applied.   The party who attempts to deceive the public by the use of a trade-mark, which contains on its face a falsehood as to the place where his goods are manufactured, in order to have the benefit of the reputation which such goods have acquired in the market, is guilty of the same fraud of which he complains in the defendant.   He certainly can have no claim to the extraordinary interposition of a tribunal, constituted to administer equity, for the purpose of securing to him the profits arising from his fraudulent act.   Thus, in Pidding *v.* How, 8 Sim. 477, the plaintiff had made a new sort of mixed tea and sold it under the name of "Howqua's Mixture;" but as he had made false statements as to the teas of which his mixture was composed, and as to the mode in which they were procured, the court refused an injunction, Vice-Chancellor Shadwell remarking, "it is a clear rule, laid down by courts of equity, not to extend their protection to a person whose case is not founded in truth."   In Flavel *v.* Harrison, 10 Hare 467, an injunction was refused, where an article was sold by the name of Flavel's Patent Kitchener, for which there never had been a patent.   In Leather Cloth Company *v.* American Leather Cloth Company, 11 House of Lords Cases 533, though decided on the ground that the mark used by the defendants was substantially different from that of the plaintiffs, yet it may be fairly inferred from all the opinions that, if necessary, the decree of Lord Chancellor Westbury would have been affirmed on the broader ground.   Thus, a company, which had gained reputation by a particular manufacture, on discontinuing their business, transferred their stamp or trade-mark, which indicated them as the manufacturers, to other parties; and it was the opinion expressed that such assignees would not be protected in equity in the use of that mark on goods manufactured by themselves.   "So," said Lord Cranworth, "in the cases of bottles or casks of wine stamped as being the growth of a celebrated vineyard, or cheese marked as the produce of a famous dairy, or of hops stamped as coming from a well known hop-garden in Kent or Surrey, no protection would be given to the sellers of such goods, if they were not really the produce of the place from which they purported to come."   It is contended, however, that this case is different, because there were marks or words used with these labels inconsistent with the idea that they were held forth as manufactured in Havana.   On the label is printed, "Entered according to Act of Congress, A. D. 1858, by Lorin Palmer, in the Clerk's Office of the Southern District of New York."   Apart from the fact that this is in such very small type, and so abbreviated that it would probably escape the observation of every one whose attention was not specially directed to it, a circumstance which rather strengthens the evidence of an intention to mislead the public, what is there in the fact that the

[*Palmer v. Harris.*]

design or engraving had been copyrighted in the United States, inconsistent with the declaration that the cigars, contained in the box, were manufactured in Havana of Cuban tobacco? But, again, it is said that the United States' internal revenue stamp would at once undeceive the purchaser, there being a difference between the stamp used for articles imported and for those of domestic manufacture. Few persons would stop to notice this difference; and besides, as it is alleged, the trade-mark is pasted on the inside of the lid, and when the box is open for the purpose of retailing, the trade-mark is brought directly in the view of persons wishing to purchase, and the revenue stamp is not seen unless the lid is turned down, and the box examined on the outside. It is contended, further, that the falsehood is in a foreign language, of which it is to be presumed that the plaintiff's customers are ignorant. Yet there is certainly enough to convey to every one who can read that the cigars are from "Havana." It is true, that when a slander is uttered in a foreign tongue, it is necessary, in an action for damage, to prove that the hearers understood the language; for it will not be presumed that, being ignorant of the meaning of the words, they afterwards repeated them to those who understood them: 2 Starkie on Slander 52; but there is no such rule in an action for a libel in a foreign language, for *litera scripta manet;* that may be read and explained by those who do to those who do not understand it. The case of a written or printed libel has a much closer analogy to the point before us than that of spoken slander. But above all this, it is not necessary that any one person has been actually deceived or defrauded; it is enough that it is a misrepresentation, calculated to have that effect on the unwary and unsuspicious.

    Decree affirmed and appeal dismissed at the costs of the appellant.