# E. T. Fraim Lock Company *v.* Shimer, Appellant.

*Trade-marks—Equity—Answer—Discontinuance of use of mark.*

1. The mere fact that the defendant in a trade-mark bill had no knowledge of the plaintiff's prior appropriation of the trade-mark and that he discontinued the use thereof as soon as he had been notified of the prior appropriation, is not ground for refusing an injunction or dismissing the bill, where the defendant in his answer denies the right of the plaintiff to the exclusive use of the mark, and in no way intimates that he himself will not resume its use in the future.

*Trade-marks—Registration—Conclusiveness of certificate—Act of June 20, 1901, P. L. 582.*

2. The certificate of the registration of a trade-mark under the Act of June 20, 1901, P. L. 582, is not conclusive as to the right of the holder of the certificate to the exclusive use of the trade-mark. The jurisdiction of the courts to determine the validity of the right claimed in the mark, is not divested.

*Trade-marks—Devices and symbols—Origin and ownership.*

3. The office of a trade-mark is to point out distinctly the origin or ownership of the article to which it is affixed, and thus to protect the purchaser as well as the vendor; but a name, device or a symbol, although arbitrary and fanciful may, in process of time, come, by association, to point unmistakably to the origin of the article, although not immediately connected with the name of the owner or place of manufacture.

4. The design or emblem of a keystone slightly raised over the keyhole of an ordinary padlock may be adopted as a valid technical trademark.

*Trade-marks—Wrongful use—Penalties under the Act of June 20, 1901, P. L. 582.*

5. The penalties provided by the Act of June 20, 1901, P. L. 582, for the wrongful use of trade-marks registered under the provisions of the act, may be imposed, although the person making such use of the trade-mark, adopted it prior to its registration without knowledge of the prior adoption, and used it after the registration without knowl-

222 E. T. FRAIM LOCK CO. *v.* SHIMER, Appellant.

edge of the registration. The word "wrongfully" used in the act does not mean "with a fraudulent intent."

Argued Dec. 10, 1909. Appeal, No. 188, Oct. T., 1909, by defendant, from decree of C. P. Northampton Co., Feb. T., 1909, No. 4, on bill in equity.in case of E. T. Fraim Lock Company v. Milton J. Shimer, trading as William Shimer & Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction.

SCOTT, P. J., filed the following opinion:

The plaintiff corporation claims property in a trademark by prior adoption against the defendant and by registration on November 6, 1907, in the office of the secretary of the commonwealth, under the provisions of the Act of assembly of June 20, 1901, P. L. 582. Some facts are stated in the answers to requests, separately filed. These are additional.

The design or emblem is the keystone symbol of the commonwealth, slightly raised, over the keyhole which divides it of a small ordinary padlock such as is usually sold in commerce. The lock manufactured by the defendant is similar in size, shape and design, with the same emblem, cast in the same manner. Both are exactly alike in general appearance, but the plaintiff's is a little finer in finish. There are no letters or words of any kind on either.

The plaintiff company and its predecessors, whose rights it owns, have manufactured different patterns of locks in various designs, with the keystone emblem, since 1879. The defendant and his predecessors, in whose firms he has been a member since 1875, have manufactured continuously from that date certain small articles of hardware, such as sadirons, polishing irons, and others specified in the findings, with the same unlettered and otherwise unmarked symbol stamped upon them. They

began to manufacture locks in 1887, but without any symbol. The padlocks in question were not made by the plaintiff until 1900, nor by the defendant until January, 1906. Each party was without knowledge of the other's manufacture. In the summer of 1906, the plaintiff's president, who lives at Lancaster, Pa., learned of goods upon the market similar to its own, but did not ascertain that the defendant, who lives at Freemansburg, in Northampton county, was manufacturing them until 1908. He then caused notice to be served upon the defendant to desist from the alleged infringement. The latter, who thus first obtained knowledge of the plaintiff's goods, stopped the manufacture by advice of counsel, and withdrew his locks from the market. From January, 1906, until August, 1908, the defendant sold 242⅔ gross of said locks upon which the profit was $359.14. The plaintiff's sales of these locks in 1905 were 4,872 dozen; in 1906 they were 4,127 dozen; 830 dozen in 1907; 1,020 dozen in 1908. His profit was twenty-three cents per dozen.

I cannot find that the diminution in plaintiff's sales for 1907–1908 measures the damages which he sustained. In the absence of other conditions by which they would probably be affected, it might perhaps be legally sufficient for the conclusion if the loss were no greater than the profit at his own price would be upon the amount of defendant's sales: Shaw & Co. v. Pilling & Son, 175 Pa. 78. But when we regard the universal business depression of all kinds during that period, and still existing, it is inadmissible. There is no other evidence.

### OPINION AND DISCUSSION.

The penalty clause of the act of 1901 was declared to be constitutional in Bergner & Engel Co. v. Koenig, 30 Pa. Superior Ct. 618, but otherwise the statute has not been before the appellate court for interpretation. Reference will, however, be made to another case yet unreported, in which its specific terms were not drawn into the controversy.

Upon making and filing certain affidavits by the applicant the secretary of state is authorized to issue a certificate, which "shall in all suits and prosecutions under this act be sufficient proof of the adoption of such label, trade-mark," etc. But it is no more. The secretary is a ministerial, not a judicial officer, and his certificate upon ex parte proofs without hearing could not divest the jurisdiction of the courts to determine the validity of the act of appropriation or the character of the symbol as a lawful trade-mark. One who had already, before the statute was passed, acquired title to or property in a trade name which became a valuable asset, or even afterwards, and before such registration does not forfeit it to some recent business rival who may wish to use it and applies for registry. But the act itself points out a method of retention if a prior owner has omitted the registration, and the courts always for either contestant may upon bill supervise this action. As a trade-mark is property, if the statute was intended to be conclusive and does upon its face effectuate this purpose, it is in contravention of the bill of rights and of the fourteenth amendment to the federal constitution. Recording acts may postpone but do not create titles. An act of assembly which operates retrospectively to take the property of John Doe and give it to Richard Roe, is prohibited by the fundamental law: Palairet's Appeal, 67 Pa. 479. The statute, however, does not purport to be so intended. The certificate is declared to be proof of adoption only, without reference to time, and prohibits infringement subsequent to registration, until or less the registry is revoked upon proof before the secretary of state that there has been a prior adoption of the mark. In neither particular is his action judicial nor beyond ultimate determination by the courts. But unless the remedy for revocation given by the statute be invoked it is not subject to collateral attack.

The original acts of congress providing for registration were declared to be unconstitutional because they were a regulation of domestic commerce: Trade-mark Cases,

100 U. S. 82. Then followed the Act of March 3, 1881, 7 Fed. Stat. Ann. 329. This defined registration as prima facie evidence of ownership only and all existing rights were in terms expressly reserved. A bill by the registering party under it may be dismissed because the name registered is not a lawful trade-mark: Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665 (21 Sup. Ct. Repr. 270); Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U. S. 166 (26 Sup. Ct. Repr. 425). One person may be registered owner, and another the actual owner of the mark: Sarrazin v. Cigar, etc., Co., 93 Fed. Repr. 624, 628. Under this statute an injunction will not issue upon the certificate of registration from the Patent Office. It is not a judicial act: Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 123 Fed. Repr. 149 (aff'd 201 U. S. 166). Nor does it give title, if none existed independently: Edison v. Thomas A. Edison, Jr., Chem. Co., 128 Fed. Repr. 1013. But the Pennsylvania act expressly authorizes an injunction and assessment of damages for its violation, upon exhibition of an unrevoked certificate. The act of 1901 was designed for something, and within the limits of constitutional legislation that effect must be given to it.

Now it is clear enough that after the date of the statute the defendant here, before the adoption of any mark of his own, was bound to inquire in the registration office, and would be answerable by constructive notice thereof for infringement of any mark then shown to have been registered. He adopted the mark in January, 1906, but without registration on his own part, as he might have done, and the plaintiff's registry was not made until November 7, 1907. He received actual notice from the plaintiff and his first knowledge of the similar symbol in August, 1908, whereupon he ceased the manufacture and withdrew his locks from the market. Does he under these circumstances, by unintentional violation of the statute, incur its penalties? A chancellor is never easily moved to penalize an innocent party against whom relief is sought.

In Brennan v. Emery-Bird-Thayer Dry-Goods Co., 99 Fed. Repr. 971, it was held under the act of congress, that if there had been innocent infringement, but stopped under actual notice, an injunction bill would not be entertained, because there was no threatened injury. It was said, however, these facts must appear in the pleadings, while in the present case there is in the answer a general denial of the plaintiff's rights, and no assertion or suggestion that the manufacture may not be continued.

The statute is mandatory. "The court in addition to the penalty shall award," etc. It must at least, as in all other such cases, receive a strict construction, and exact compliance be shown with all its terms. "The fine or penalty" is to be inflicted irrespective of the fact that the plaintiff in any case may have suffered no actual damages at all, or be unable to prove they have resulted from the acts of a defendant. If the certificate is to be taken as proof of the plaintiff's adoption of the mark, it does not, therefore, extend beyond the date of registry. If the statute protects the owner of a trade-mark by requiring the world to take notice of the registry, it also protects the alleged infringer of his rights to the extent that he is not bound to inquire beyond the record which he makes for himself. In any event no profits made by defendant would be recoverable, nor damages if they had been established, except from the date of registration to August, 1908. They are expressly limited to unlawful sales made afterwards. The statute is penal in character. The court is to impose a fine of $200, forfeit defendant's profits, beside award actual damages. Whether the two last items correctly represent the measure of damages in a suit at law for infringement, they are nevertheless penalties here, for a chancellor does not always, or necessarily, decree them for unintentional offending. A person innocently selling goods bearing the spurious trade-mark of another is not in equity absolutely liable to account for the profits made thereby, but the owner is entitled to an injunction: Moet v. Conston, 33 Beav. 578. The Superior

Court in the case cited has sustained its validity because on behalf of public interests as well as for private protection "the object of the statute is to punish one who unlawfully appropriates the trade-mark of another." This was predicted of the fact admitted by demurrer that the defendant "wrongfully and injuriously adopted an imitation which he falsely represented to be the trade-mark of the plaintiff." The later decision, December 14, 1908, at Pittsburg (not yet reported), in Hohenstein et al. v. Abraham Prelstein et al., No. 37, April Term, 1908, the exemplification of which is before me, shows that the defendants continued to use the registered trade-mark of the Carter shoes, after personal notice of the registration, and continued to sell them under the trade name. "They persistently sought," said Judge HEAD, "to secure to themselves some of the benefits, real or fanciful, which they must have assumed attached to the use in some form of the word 'Carter.'" The forbidden acts it seems partake of the nature of a public offense. The penalties are to follow only when "any person shall hereafter wrongfully perform or permit" any act expressly prohibited or declared unlawful in sec. 3.

But I have found no authority to support the proposition that this emphasized word means willful or intentional or anything more when employed in statute making than a bare invasion of a right. Vide 8 Words and Phrases; 2 Bouvier's Law Dict. 1251. A wrong is inflicted in legal contemplation whether or not it may have been done with a bad motive. That ingredient of the act is only a question of aggravation (Williams v. Hays, 143 N. Y. 442, 447), and penalties are frequently imposed for acts ignorantly committed. They are sometimes punished by indictment: Com. v. Holstine, 132 Pa. 357.

In such cases it required another statute to give relief: Act of May 25, 1897, P. L.93. It was the necessary conclusion from this discussion:

1. That if this be a lawful trade-mark the defendant must pay the penalty prescribed for default in not register-

ing his own when adopted, and continuing to employ it without examination of the registration record, or making application to have that of the plaintiff's revoked.

2. That he is liable to· pay plaintiff the profits made from his manufacture and sale of the marked padlock from November 7, 1907, to August, 1908. But no exact account of this proportion of total profits from manufacture have been shown. No other damages have been proven.

3. That the registration of adoption by the plaintiff does not close judicial inquiry into the validity of the alleged trade-mark to give him by appropriation of it a monopoly in its use.

The defendant had used the symbol of a keystone on various small articles of his hardware manufacture, as far back as 1875, but not on these locks until 1906. The plaintiff's predecessors began business in 1879 and first employed this mark in 1900. It is the rule that when one has acquired the right to use a trade-mark in connection with particular goods, no one else can adopt it to distinguish wares of that same general class.

The defendant, however, did not employ the device on any of the different varieties of locks, the manufacture of which he began in 1887, until he stamped it on this particular padlock first made in 1906.

The application of the rule is too restricted to protect the defendant, as it would have done had the symbol been employed earlier ·on any of his different styles and patterns of locks. Many cases which illustrate the distinction will be found collected in 28 Am. & Eng. Ency. of Law (2d ed.), 389, and notes. But the question of prior adoption is not open to be disputed in this proceeding. Registration would not otherwise serve the purpose intended by its specific terms which are unlike the act of congress. In point of fact plaintiff's original employment of it was first.

There is a further question in the contention. The plaintiff's right to· an injunction is challenged on the ground that the particular device or symbol is not a distinctive or lawful trade-mark at all. The cases which

bear any relation to this subject are not entirely plain in meaning, because the facts in each are so variously different that discussion of some of them in connection with a general rule has led to statements apparently confusing or equivocal when set in comparison with others. I have closely examined a great many more of them than will find reference in this opinion. There may be cases in which a mere arbitrary symbol or device (not name) without other label or designation in association pointing to individual origin or ownership, or distinguishing it in combination, will be protected as a trade-mark, but none of that exact kind have been pointed out. It has been said "A trade-mark is one's commercial signature to his goods:" Leidersdorf v. Flint, 8 Biss. (U. S.) 327.

Even a device not a technical trade-mark because generic or geographical may by long adoption and use acquire what is called a "secondary signification" which will be protected against unfair competition through imposition and fraud: Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665 (21 Sup. Ct. Repr. 270). The intentional purpose it has been said in unfair competition must be clearly proven: Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537 (11 Sup. Ct. Rep. 396); Cheavin v. Walker, L. R. 5 Ch. D. 850; vide dissenting opinion of Mr. Justice MITCHELL in Brown et al. v. Seidel et al., 153 Pa. 60. In Juan F. Portuondo Cigar Mfg. Co. v.. Cigar Mfg. Co., 222 Pa. 116, to which I am referred, the design to deceive was expressly found, and constituted the fundamental reason for the decree. But there are authorities opposed to this view too, and in the case of identical trade names, which however differ from an arbitrary symbol standing alone, a more stringent rule is applied: American Clay Mfg. Co. v. Clay Mfg. Co., 198 Pa. 189.

If there be a lawful trade-mark or name, the motive of infringement is immaterial. It will be protected in the owner when established, although two traders have taken the same symbol, each in ignorance that the other uses it,

or with an honest doubt as to who has the legal right therein: Brown on Trade-marks, sec. 449; Pratt's App., 117 Pa. 401.

The keystone is the popular symbol of the commonwealth. I do not imply that thereby the device in itself or her coat of arms must be assigned to the generic or territorial class as if it were a name like "Lackawanna" (Canal Co. v. Clark, 80 U. S. 311) or "Glendon" (Glendon Iron Co. v. Uhler & Fulmer, 75 Pa. 467), which all persons within the district or state might use with equal liberty and truthfulness. There is no other distinguishing or physical mark to identify its origin. But it is not necessary that the name or place of business of the owner should appear upon it, nor that the purchaser should know to whom it belongs, if its long use points definitely to some unknown proprietor to whom it has become valuable: 28 Am. & Eng. Ency. of Law (2d ed.), 351, and notes. This principle in actual application seems to be almost, if not entirely, limited to cases, so far as reported, in which there is an arbitrary or fanciful name which it will be perceived has a significance of its own more specific than a symbol: 28 Am. & Eng. Ency. of Law, 359.

In Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U. S. 166 (26 Sup. Ct. Repr. 425), the mark registered was to consist of a red or other distinctively colored streak applied to or woven in a wire rope. It was held that this was too indefinite in the first place, and then "whether mere color can constitute a valid trademark may admit of doubt. Doubtless it may be if it be impressed in a particular design, as a circle, square, triangle, a cross or a star. But the authorities do not go farther than this: Vide Putnam Nail Co. v. Dulaney, 140 Pa. 205; Lafean et al. v. Weeks & Co., 177 Pa. 412.

The rules to be deduced from the decisions are formulated in Columbia Mill Co. v. Alcorn, 150 U. S. 460 (14 Sup. Ct. Repr. 151), and are thus stated:

1. That to acquire the right to the exclusive use of a name, device or symbol, as a trade-mark, it must appear

that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached or that such trade-mark must point distinctively either by itself or association to the origin, manufacture or ownership of the article on which it is stamped. It must be designated as its primary object and purpose to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others.

2. That if the device, mark, or symbol was adopted or placed upon the article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it cannot be sustained as a valid trade-mark.

3. That the exclusive right to the use of the mark or device claimed as a trade-mark is founded on priority of appropriation, that is to say, the claimant of the trade-mark must have been the first to use or employ the same on like articles of production.

4. Such trade-mark cannot consist of words in common use as designating locality, section or region of territory.

An illustration of the kind of trade-mark in an arbitrary symbol which will be protected when used in combination with something that points to its origin, will be found in Pratt's App., 117 Pa. 401.

These rules have found substantial expression in Pennsylvania: Ferguson et al. v. Davol Mills et al., 7 Phila. 253; Dixon Crucible Co. v. Guggenheim, 7 Phila. 408, 415, 416 (approved generally by the Supreme Court in Heinz v. Lutz, 146 Pa. 592); White v. Schlect, 14 Phila. 88 (device was merely a drum on collars); Laughman's App., 128 Pa. 1; McVey v. Brendel, 144 Pa. 235. In Hohenstein et al. v. Perelstine et al., supra, the device registered was combined with the trade name "Carter."

But the real test of application here must be taken to lie in the meaning of the words "either by itself or association" in the statement of the first rule above cited.

It must not be forgotten that while the keystone mark

on this lock is absent from any combination of words to point to the manufacturer, its design is a particular one. It is pierced by the keyhole, and not stamped generally upon the lock, and by its use thus with specific combination for six years prior to its employment by the defendant may be properly said to have acquired "association" with the owner and his wares in the market, although unidentified by name.

This view was adopted by the president judge, now of the Superior Court, when sitting in the common pleas, Gowans v. Ahlborn Bros., 4 Kulp, 31, and he referred to Sheppard et al. v. Stuart et al., 7 W. N. C. 498, where Judge FINLETTER declined to follow the decisions of two of his associates in Philadelphia in the cases above noted. Upon the consideration herein stated I must conclude that the plaintiff has shown its right to a technical trade-mark; its specific design and use in the market has given to it that association and character by which the defendant's ignorant and accidental employment of it if continued would have a tendency by the exact similarity, as in the case of the same trade name (American Clay Mfg. Co. v. Clay Mfg. Co., 198 Pa. 189) to confuse the public mind respecting the manufacturer, and the identity of the wares.   For this equity will extend its protection.

Now, June 21, 1909, this cause came on to be heard, and after arguments of counsel and due consideration, it is ordered, adjudged and decreed that the defendant be and he hereby is enjoined from the manufacture and sale of the padlock similar in design and mark to that of the plaintiff as registered in the office of the secretary of state November 6, 1907; that he be and hereby is adjudged to pay to the plaintiff a penalty of $200 and the further sum of $207.20 as profits realized by him upon sales of the infringed locks from November 6, 1907, to the time he ceased manufacture of them in August, 1908. The defendant will pay the costs.

*Error assigned* was the decree of the court.

*John D. Hoffman*, for appellant.—It is necessary that the symbol be sufficiently distinctive, or arbitrary, so as to distinguish plaintiff's goods from those of another; and which other persons cannot use with equal truth as applied to their own goods: Putnam Nail Co. v. Dulaney, 140 Pa. 205; Leschen & Sons Rope Co. v. Broderick, etc., Rope Co., 201 U. S. 166 (26 Sup. Ct. Repr. 425); Brown v. Seidel, 153 Pa. 60; Hoyt v. Hoyt, 143 Pa. 623; Elgin Nat. Watch Co. v. Watch Case Co., 179 U. S. 665 (21 Sup. Ct. Repr. 270); Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19 (21 Sup. Ct. Repr. 7); Castner v. Coffman, 178 U. S. 168 (20 Sup. Ct. Repr. 842); Glendon Iron Co. v. Uhler, 75 Pa. 467; Columbia Mill Co. v. Alcorn, 150 U. S. 460 (14 Sup. Ct. Repr. 151).

There is absolutely no evidence that there was any unfair intent to compete. On the contrary, it is established clearly as a fact, that defendant knew nothing of plaintiff's claim, and that when he first learned of it, he ceased the sale of the locks in dispute, and therefore on this ground alone the bill also must be dismissed: Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537 (11 Sup. Ct. Repr. 396); Brown v. Seidel, 153 Pa. 60; Brennan v. Dry-Goods Co., 99 Fed. Repr. 971.

It is an undeniable fact, and one so found by the court, that defendant, if he offended at all, did so innocently, and that when he heard of plaintiff's complaint he ceased to sell the kind of locks complained of. We claim that as there was no fraudulent purpose to deceive, no penalty is recoverable under the Act of June 20, 1901, P. L. 582: American Clay Mfg. Co. v. Clay Mfg. Co., 198 Pa. 189; MacMahan Co. v. Chemical Mfg. Co., 113 Fed. Repr. 471; Juan F. Portuondo Cigar Mfg. Co. v. Cigar Mfg. Co., 222 Pa. 116; Com. v. Norton, 16 Pa. Superior Ct. 423; Hohenstein v. Perelstine, 37 Pa. Superior Ct. 540.

*H. J. Steele*, with him *John A. Nauman*, for appellee, cited: Com. v. Norton, 16 Pa. Superior Ct. 423; Perkins v. Heert, 158 N. Y. 306 (53 N. E. Repr. 18); Tracy v.

Banker, 170 Mass. 266 (49 N. E. Repr. 308); Pratt's App., 117 Pa. 401; Hohenstein v. Perelstine, 37 Pa. Superior Ct. 540; Cigar Mfg. Co. v. Cigar Mfg. Co., 222 Pa. 116; George v. Smith, 52 Fed. Repr. 830; Celluloid Mfg. Co. v. Read, 47 Fed. Repr. 712; Colman v. Crump, 70 N. Y. 573; Hoard v. Wilcox, 47 Pa. 51; Campbell v. Grooms, 101 Pa. 481.

OPINION BY RICE, P. J., July 20, 1910:

The principal object of this bill in equity was to restrain the infringement of a trade-mark which is thus described: The design or emblem is the keystone symbol of the commonwealth, slightly raised over the keyhole, which divides it, of a small ordinary padlock, such as is usually sold in commerce. The padlock manufactured by the defendant is similar in size, shape and design, with the same emblem cast in the same manner. Both are exactly alike in general appearance, but the plaintiff's is a little finer in finish. There are no letters or words of any kind on either. This precise emblem was appropriated by the plaintiff or its predecessor and first applied as above described to padlocks of its manufacture in 1900, and by the defendant or his predecessor to padlocks of his manufacture in 1906. On November 6, 1907, the plaintiff caused it to be registered in the office of the secretary of the commonwealth in the manner prescribed in the Act of June 20, 1901, P. L. 582, and received from that officer a duly attested certificate of the record. The defendant, without actual knowledge of the prior appropriation by the plaintiff and this registration on November 6, 1907, continued the use of the trade-mark until August, 1908, when, being notified by the plaintiff of the alleged infringement, he discontinued the manufacture and sale of padlocks bearing it.

1. It is argued that on this last ground alone the bill ought to have been dismissed. It is to be noticed, however, that the ground of defense set up in the defendant's answer was not that this was an innocent infringement

which he discontinued as soon as discovered. There, he not only challenged the right of the plaintiff to the trade-mark in question, but he also denied that he had at any time done anything that would entitle the plaintiff to the relief prayed for. In effect, he asserted the right to do in the future what he had done in the past, and gave no intimation that it was his intention not to resume the manufacture and sale of padlocks bearing this trade-mark. In view of the issue upon which the case went to final hearing, the mere fact, proved on the trial, that he discontinued the manufacture and sale which he, in effect, asserted the right to resume at any time, if not restrained, was not ground for refusing an injunction, much less for dismissing the bill.

2. The learned judge held that the certificate of the secretary of the commonwealth, issued under the act of 1901, upon ex parte proofs, does not divest the jurisdiction of the courts to determine the validity of the act of appropriation or the character of the symbol as a lawful trade-mark, and, therefore, it did not of itself preclude the defendant from asserting its invalidity and denying the right of the plaintiff to a monopoly in its use. This conclusion is so well supported by his opinion that we adopt it without further discussion.

3. The office of a trade-mark is to point out distinctly the origin or ownership of the article to which it is affixed: Delaware & Hudson Canal Co. v. Clark, 80 U. S. 311, and thus to protect the purchaser as well as the vendor. But that a name, device or symbol, although arbitrary and fanciful, may in process of time come, by association, to point unmistakably to the origin of the article, although not immediately connected with the name of the owner or place of manufacture, is a proposition that is supported not only by reason but by authority. It would be an almost endless task to review and attempt to harmonize or distinguish all the cases from the different jurisdictions of this country in which names and symbols as trade-marks have been considered. But it is safe to

say that the proposition as we have stated it is supported by the weight of authority. In the case last cited, Justice STRONG, after elaborately discussing the question, said: "Hence the trade-mark must either by itself, or by association, point distinctively to the origin or ownership of the article to which it is applied. The reason of this is that unless it does, neither can he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived. The first appropriator of a name or device pointing to his ownership, or which, by being associated with articles of trade, has acquired an understood reference to the originator, or manufacturer of the articles, is injured whenever another adopts the same name or device for similar articles, because such adoption is in effect representing falsely that the productions of the latter are those of the former. . . . The trade-mark must, therefore, be distinctive in its original signification, pointing to the origin of the article, or it must have become such by association." And, as pointed out in the opinion of the learned judge in this case, the same principle is recognized in other cases, and particularly in the rules formulated in Columbia Mill Co. v. Alcorn, 150 U. S. 460. Applying this principle to the facts of the case, he reached the conclusion which we deem it important to quote in this immediate connection. "Upon the considerations herein stated I must conclude that the plaintiffs have shown their right to a technical trade-mark; its specific design and use in the market has given to it that association and character by which the defendant's ignorant and accidental employment of it, if continued, would have a tendency by the exact similarity, as in the case of the same trade name (American Clay Mfg. Co. v. Clay Mfg. Co., 198 Pa. 189) to confuse the public mind respecting the manufacturer, and the identity of the wares. For this equity will extend its protection." We need not reiterate the citation of other cases, supporting this conclusion, that will be found in his opinion and in the appellee's brief. We deem it sufficient to say that,

after deliberate consideration of the evidence, the learned
argument of appellant's counsel, and the authorities bear-
ing upon the question, we unanimously concur in the fore-
going conclusion and in the reasoning of the opinion of
the learned judge in support of it.

4. In his eighth point of law the defendant requested
the court to find that in any event no penalty can be
visited on defendant, but only an award of injunction
against him restraining him from using said trade-mark,
"as his act was neither fraudulent nor calculated to de-
ceive." The majority of us are of opinion that this point
was properly refused and that no error was committed in
imposing the penalty. It is true the court found as a
fact that the defendant adopted the trade-mark without
actual knowledge of its prior adoption by the plaintiff,
and continued its use after registration, without actual
knowledge of that fact. But the court did not find, and
would not have been warranted in finding, that the de-
fendant's action was not calculated to deceive. On the
contrary, irrespective of fraudulent intention, the tend-
ency of his action was to produce confusion in the public
mind and consequent loss to the plaintiff. And the gen-
eral rule is, that anything done by a rival in the same
business, by imitation or otherwise, designed or calcu-
lated to mislead the public in the belief that in buying
the product offered by him for sale they were buying the
product of another's manufacture, would be in fraud of
that other's rights and would afford just grounds for
equitable interference: Juan F. Portuondo Cigar Mfg. Co.
v. Vicente Portuondo Cigar Mfg. Co., 222 Pa. 116; Hohen-
stein v. Perelstine, 37 Pa. Superior Ct. 540. Is the mere
fact that the defendant adopted the trade-mark in igno-
rance of the plaintiff's right to its exclusive use ground for
refusing to impose the penalty? Section 4 of the act of
1901 prescribes a penalty of $200 for wrongfully perform-
ing or permitting to be performed any act expressly pro-
hibited or declared unlawful by sec. 3, and the jurisdiction
of a court of equity upon an injunction bill to impose the

penalty is given in these words: "and the court having jurisdiction of the parties shall grant an injunction restraining the defendant from such unlawful acts, and in addition to the penalty provided for in this section shall award to the plaintiff such damages, resulting from such wrongful and unlawful acts, as may be proved, and shall require the defendant to pay to the plaintiff the profits derived from such unlawful acts." The appellant's counsel would construe this act to mean the same as if, instead of the word "wrongfully," the legislature had used the words "with fraudulent intent." This is the logical import of his argument. We are constrained to the opinion that if this had been the intention of the legislature they would have expressed it in unmistakable terms. The purpose of this statute was considered in Bergner & Engel Co. v. Koenig, 30 Pa. Superior Ct. 618, where our Brother HENDERSON, speaking for the court, said: "The proprietor of the trade-mark not only has what has been frequently called a property interest therein, but there is also a public interest out of which legislative control arises. One of the reasons for the protection of trade-marks exists in the policy of encouraging trade and manufacture and stimulating the production of commodities which are acceptable in the market. Another is the prevention of fraud upon consumers. It has long been recognized as a police power of the state to protect its citizens from imposition in regard to the kind and quality of goods they purchase, and dealers in merchandise have a right to adopt a distinguishing mark by which their commodities may be known. Legislation of this character has been enacted by the United States and by substantially all of the states and in many instances penalties have been prescribed." Further on in the opinion he says: "The object of the statute is to punish one who unlawfully appropriates the trade-mark of another. The owner may be indirectly interested, but the penalty inflicted is for the wrong done to the public. Numerous penal statutes are in force in which the penalty is recoverable in

whole or in part by the informer or the 'party aggrieved.'"
Many such statutes are cited in the opinion. In holding
that the defendant's ignorance furnishes no defense against
the recovery of the penalty, it is to be noticed, first, that
before the defendant applied the trade-mark to padlocks
of his manufacture the plaintiff had acquired, under the
application of common-law principles, the exclusive right
to its use upon padlocks; second, that the defendant con-
tinued his infringement of the plaintiff's trade-mark after
the latter had caused it to be registered in the manner pro-
vided by the act of 1901. Therefore, if the defendant
acted ignorantly in continuing the infringement it was
because he did not avail himself of the means of knowledge
which registration under the act of 1901 was intended
and was ample to furnish him. This being so, we see no
escape from the conclusion that his act was wrongful
within the true intent and meaning of the statute.

We have not discussed the case as fully as would seem
necessary if the opinion of the learned trial judge had not
so fully and satisfactorily met and answered the questions
raised by the assignments of error and the contentions
advanced in the able argument of appellant's counsel.

The decree is affirmed at the costs of the appellant.