## King v. Swartz Manufacturing Company.

*Trade-marks—Misdescription as affecting right to enjoin infringement— Similarity of marks without infringement.*

1. When the owner of a trade-mark applies for an injunction to restrain defend- ant from injuring his property by making false representations to the public, it is essential that the plaintiff should not, in his trade-mark or in his advertisements and business, be himself guilty of any false or misleading representation, and where any symbol or label claimed as a trade-mark is so constructed or worded as to make or contain a distinct material assertion which is false, no property can be claimed in it; or, in other words, the right to its exclusive use cannot be main- tained.

2. Whether or not an imitation which is not an exact copy constitutes an infringement depends upon whether the resemblance is sufficiently close to deceive purchasers and so pass off the goods of one man for those of another. Where one mark could not reasonably be mistaken for the other, and deception is improbable or impossible, there is no infringement.

3. A invented a device for feeding air to furnaces, thereby facilitating combus- tion with an alleged saving of coal. He had the device recorded at Harrisburg under the Act of June 20, 1901, P. L. 582, the trade-mark being "Karburetor" or "Carburetor," either by itself or associated with other terms, words, letters, devices or designations. He also recorded a picture of the device, and put the device on the market under the name of "King Koal Karburetor." B put on the market a somewhat similar device, under the designation of "Master Coal Saving Carbu- retor," and had this designation duly registered at Harrisburg under the same act, the trade-mark being "Master." B advertised his product as "Master Coal Saving Carburetor," and attached his name to each of the devices sold in such a way as to indicate that he was the manufacturer and that the device was a "Master" and not a "King Koal" carburetor; no attempt was made to deceive purchasers, nor was there any evidence that any were so deceived by similarity in advertising matter. B's picture of his device was substantially different from A's picture of his. Neither device was a carburetor in the technical sense. On bill filed by A against B to enjoin him in the use of his trade-mark and picture on the ground of infringement: *Held*, 1. That as A's device was not a carburetor, the mark was deceptive and he could not maintain the bill. 2. That there was no such similarity between the marks and pictures as would probably deceive the public, and that on either ground the bill should be dismissed.

Bill, answer, replication and proofs. C. P. No. 2, Phila. Co., June T., 1921, No. 3488, in Equity.

*William M. Reese*, for plaintiff.

*Edward H. Cushman* and *J. Quincy Hunsicker, Jr.*, for defendant.

STERN, J., Jan. 24, 1922.—This is a bill in equity to enjoin the use of words and pictures which are alleged to be infringements upon trade-marks pre- viously appropriated by the complainant. On bill, answer, replication and proofs the court adopts as its findings of fact and conclusions of law the plaintiff's and defendant's requests for findings of fact and conclusions of law as affirmed or modified by the chancellor, and which are sufficiently com- plete to obviate the necessity of additional findings being made.

1 D. & C.

King v. Swartz Manufacturing Company.

Eliminating the question of any contested patent rights as to the device itself, the facts concerning the trade-marks are comparatively simple. It appears that the plaintiff, having, as he claims, invented a device for feeding air to furnaces and thereby facilitating the combustion process with an alleged resultant saving of coal, put this device on the market under the name of "King Koal Karburetor." He sought to protect this designation by recording at Harrisburg, under the Act of June 20, 1901, P. L. 582, the trade-mark "Karburetor" or "Carburetor," either by itself or associated with other terms, words, letters, devices or designations, and he also recorded under the same act a trade-mark, consisting of the representation of an air-feeding device, embodying a stem or conduit with or without an air regulator and attaching means at one end and with a relatively large casing at the other end. This representation is, in substance, a picture of the device itself. The defendant company has put upon the market a somewhat similar device under the designation of "Master Coal Saving Carburetor," and has sought to protect itself in the use of such designation by registering at Harrisburg under the same act the trade-mark "Master." The Secretary of the Commonwealth issued certificates of registration of these several trade-marks as above described.

The plaintiff, having directly or indirectly spent large sums of money in the distribution and advertising of his air-feeding device, and having been prior to the defendant in the use of the two designations employed by him as above stated, seeks to enjoin the defendant from advertising the latter's product as a "Carburetor" on the ground that the use of such designation is a violation of the plaintiff's rights. He also seeks, for the same reason, to enjoin the use by the defendant of pictures or representations of the defendant's device, which he claims are so similar in appearance and design to his own as to be likely to deceive the purchasing public.

The defendant contends that the plaintiff's air-feeding device is in fact a carburetor, and, therefore, that the word, being descriptive of the product to which it is applied, cannot be exclusively appropriated by the plaintiff as a trade-mark. He further contends that the picture of the so-called "King Koal Karburetor" is likewise a graphic representation of the device itself, and, therefore, incapable of being established as a valid trade-mark. As an alternative proposition, the defendant argues that if the plaintiff's device is not a carburetor, its designation as such is misleading and deceptive, and that, therefore, the plaintiff can assert no rights in regard to it. Finally, it is urged by the defendant that there is such a clear difference between the designations "King Koal Karburetor" and "Master Coal Saving Carburetor," and between the pictures and representations used by the parties respectively, that there is no likelihood or probability of the public being deceived, and, therefore, that there is no element in the case of infringement or of unfair trade competition.

Practically the only disputed fact in the case is in regard to the question as to whether or not the devices sold by the parties are in reality carburetors. On this point the chancellor has found as a fact that they are not carburetors. The explanation of this finding is that a carburetor seems in scientific parlance to be a device or instrument in which air is mixed with the gas or vapor of a volatile fuel for the purpose of securing better combustion of the fuel by increasing its illuminating power. In order to constitute an appliance a carburetor, it is essential that the mixture of air and gas or vapor must occur within the device itself. Obviously, a mere tube or pipe through which air passes into a furnace is not a carburetor, but is merely a blowpipe or air-feeding device, and, as far as the so-called "King Koal Karburetor" is con-

cerned, there is not even a contention that any such mixture is effected within the device. In the case of the "Master Coal Saving Carburetor," it was vigorously urged that such a mixture was accomplished, in that there is in that instrument an aperture in the side of the pipe within the furnace which admits the volatile gases from the fuel, and that the gas and air so mixed pass out through the end of the device into the fire chamber. In regard to this contention, the chancellor has come to the conclusion that no inflammable gas enters through the aperture as claimed, but that, on the contrary, the only effect of such aperture is that some of the incoming air passes through it into the furnace instead of passing out of the terminal end of the pipe. It is thought that the physical laws of pressure, as explained in the testimony, and which need not be further adverted to here, would prevent the making of any other finding. However, whether this be so or not, it seems entirely clear, as above stated, that at least the "King Koal Karburetor" is not in fact a carburetor, and that finding is sufficient for the purposes of this adjudication.

We are thus brought to the alternative question, namely, if the "King Koal Karburetor" is not in fact a carburetor, can the plaintiff, by designating it as a "carburetor," maintain an exclusive right to the appropriation of such designation?

As a preliminary proposition, it may be pointed out that the certificates of registration of the Secretary of the Commonwealth issued to the plaintiff do not divest the jurisdiction of the courts to determine the validity of the act of appropriation or the character of the symbol as a lawful trade-mark, and, therefore, do not of themselves preclude the defendant from asserting the invalidity of the trade-mark and denying the right of the plaintiff to a monopoly in its use: E. T. Fraim Lock Co. v. Shimer, 43 Pa. Superior Ct. 221; Hub Clothing Co. v. Cohen, 270 Pa. 487.

Reverting now to the inquiry as to whether the plaintiff can lawfully acquire the legal and exclusive right to a trade-mark consisting of the word "Carburetor," as applied to a device which in fact is not a carburetor, we are confronted at the outset with the general proposition that "if an alleged trade-mark involves any material untruth, misrepresentation, or bad faith, it will not be protected against infringement:" 38 Cyc., 700.

The principle is well established that when the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark or in his advertisements and business be himself guilty of any false or misleading representation, and if he makes any material false statement in connection with the property which he seeks to protect, he loses his right to claim the assistance of a court of equity; and where any symbol or label claimed as a trade-mark is so constructed or worded as to make or contain a distinct material assertion which is false, no property can be claimed in it, or, in other words, the right to the exclusive use of it cannot be maintained: Worden v. California Fig Syrup Co., 187 U. S. 516 (citing numerous cases from state and English reports). In that case the defendant sold a medicinal preparation in packages prepared, marked and packed in imitation of the plaintiff's medicine, for the purpose and with the design and intent of deceiving purchasers and inducing them to buy defendant's preparation instead of the plaintiff's. The Supreme Court held, however, that since the medicine advertised by the plaintiff as syrup of figs contained no juice of the fig whatever, or only a negligible quantity of it, the designation was deceptive, and accordingly the Supreme Court instructed the lower court to dismiss the bill.

1 D. & C.

The most vivid, effective and concise presentation of the doctrine involved is that presented by Judge Duer in Fetridge v. Wells, 13 How. Pr. 385. He says in that case: "Those who come into a court of equity seeking equity must come with pure hands and a pure conscience. If they claim relief against the fraud of others, they must be free themselves from the imputation. If the sales made by the plaintiff and his firm are effected, or sought to be, by misrepresentation and falsehood, they cannot be listened to when they complain that by the fraudulent rivalry of others their own fraudulent profits are diminished. An exclusive privilege for deceiving the public is assuredly not one that a court of equity can be required to aid or sanction. To do so would be to forfeit its name and character."

In Palmer v. Harris, 60 Pa. 156, a bill in equity was filed in an attempt to restrain the actual counterfeiting of a trade-mark used by the plaintiff in connection with the manufacture and sale of cigars. The plaintiff's trade-mark indicated in Spanish that the cigars were made in Havana, whereas in fact they were made in the City of New York. The defendant was a printer, who counterfeited the labels used by the plaintiff and sold them to persons who were engaged in the manufacturing and sale of cigars, by whom they were used and the plaintiff thereby damaged. The court, in an opinion by Mr. Justice Sharswood, refused to grant an injunction, and dismissed the bill.

In Wrisley v. Iowa Soap Co., 104 Fed. Repr. 548, the court refused to grant relief where the trade-mark "Old Country Soap" was used for soap made in the United States, the court holding that such an alleged trade-mark tended to induce people coming from Europe to believe that the soap was made in their home country, and that, therefore, the said mark was deceptive.

Numerous other cases might be cited along the same line.

Applying the principle to the present case, what do we find? The plaintiff seeks to protect himself in the right to sell an air-feeding device as a "Carburetor" or "Karburetor," when in fact, as the chancellor has pointed out, the instrument in question is not a carburetor. There is, therefore, a clear misdescription, and the public is deceived into buying an appliance under the mistaken assumption that it is something which it is not. This deception is not trivial, technical nor negligible, for if the device really were a carburetor and performed the function of one in mixing within itself air and gas or inflammable vapor so as to effect a combustible mixture, the result would, no doubt, have a beneficial effect in saving coal and in other aspects far greater than if the instrument in question consisted merely of a blowpipe scattering air upon the fire-bank.

In this connection, it is important to bear in mind the distinction between a designation used in an adjectival sense and one used as the very name of the object or generic group of objects to which it is sought to be applied. This distinction is perhaps not conclusive, but it is is an important factor for consideration. If the plaintiff used his trade-mark as an adjective and advertised his product as the "Carburetor Air-Feeding Device," there might still be an element of deception, but the designation could perhaps be justified as a fanciful one, similar to such designations as "Ivory Soap," "Arrow Collars," "Eagle Shirts," and the like. But the plaintiff greatly intensifies the degree of misdescription by applying the word carburetor as a noun; in other words, he calls the device a "Carburetor," with the resulting effect still further heightened by prefixing adjectival words so as to make the entire combination read "King Koal Karburetor." The case, therefore, is as if a dealer were to call a pencil a "Fountain Pen," and trade-mark and advertise it as, let us say, the "Eagle Fountain Pen," and then seek to prevent other vendors of

pencils designating and selling them as, let us say, "Arrow Fountain Pens." In short, a carburetor is scientifically and popularly known to be a device of a certain type and accomplishing certain purposes, and the plaintiff, by calling an instrument a carburetor when in fact it is not one, certainly cannot hope in equity to restrain other persons from calling similar devices carburetors, even though such other persons' products are likewise not entitled to such designation.

This brings us to another phase of the case, and that is, that even if the plaintiff has a standing to protect the word "Carburetor" as a trade-mark, his application for relief in the present case should be denied, because of the fact that there is such a difference between the trade-mark as used by the plaintiff and that used by the defendant that no infringement nor unfair competition can be said to exist.

"Whether or not an imitation which is not an exact copy constitutes an infringement depends upon whether the resemblance is sufficiently close to deceive purchasers and so pass off the goods of one man as being those of another. Where one mark could not reasonably be mistaken for the other, and deception is improbable or impossible, there is no infringement:" 38 Cyc., 745.

"To entitle a party to relief for an alleged infringement of a trade-mark, the resemblance of the simulated to the genuine trade-mark must be such as to amount to a false representation, which is liable to deceive the public and enable the imitator to pass off his goods as those of the person whose trade-mark is imitated. When ordinary attention on the part of customers will enable them to discriminate between the trade-marks of different parties, the court will not interfere:" Popham v. Cole, 66 N. Y. 69.

In Wrisley v. Iowa Soap Co., 104 Fed. Repr. 548, the plaintiff for many years had manufactured and sold soap under the trade-mark "Old Country Soap." Then the defendant began to market a soap which he called "Our Country Soap." Boxes and wrappers were dissimilar in print and color of lettering. The bars of soap of each party, while similar in color and general appearance, had stamped on one side the name of the soap and on the other the name of the maker. It was held that the mere similarity in name, in view of the other facts, was not sufficient to constitute a violation of the plaintiff's rights, it not appearing to be such as to deceive a buyer of ordinary intelligence and observation into buying defendant's soap for that of the plaintiff.

In Desmond's Appeal, 103 Pa. 126, the plaintiff sold certain medicines under the trade-mark "Samaritan's Gift." The defendant sold and advertised medicine under the trade-mark "Samaritan Nervine." The court held that the plaintiff was not entitled to relief, saying: "It (the bill) does not aver an imitation or similarity in the appearance of the labels and wrappers. An examination of the two shows they are quite dissimilar in names and appearance. It is true each has the word 'Samaritan,' but in such different form and combination of words as to preclude one medicine being taken for the other. . . . The appropriation of the word 'Samaritan' in one combination of words does not prevent its being used in all other combinations."

In Heinz v. Lutz Bros., 146 Pa. 592, the court said, by way of quotation from an opinion rendered in the Common Pleas of Philadelphia: "A similarity between the two trade-marks used by different manufacturers for their goods, although of such a character as to induce a belief in the mind of the public that they belong to and designate the goods of the same manufacturer or trader, is not of itself sufficient ground for the prohibition of the use of such trade-mark by him who did not first adopt it. That similarity, to entitle the

1 D. & C.

originator to the protection of the law, must be such as to amount to a false representation, not alone that the two articles have the same origin, but that the goods to which the simulated mark is attached are the manufacture of him who first appropriated the trade-mark." The court then proceeds to say: "A court of equity will not restrain a person from using a device on the ground that it infringes plaintiff's trade-mark, unless it is so similar in appearance that any person using such reasonable care and observation as the public generally are capable of using, and may be expected to exercise, would mistake the one for the other. . . . In trade-marks, in order to entitle the plaintiffs to relief by injunction, the resemblance must be such that ordinary purchasers, dealing with ordinary caution, are likely to be misled."

To the same effect is Brown v. Seidel, 153 Pa. 60. So, also, Kann v. Diamond Steel Co., 89 Fed. Repr. 706.

In the present case the plaintiff advertises his product as the "King Koal Karburetor;" the defendant advertises its product as "Master Coal Saving Carburetor." The defendant attaches its name to each of the devices which it sells, and clearly indicates that it is the manufacturer thereof and that the device is a "Master" and not a "King Koal" carburetor. There is no attempt to deceive purchasers, nor was any evidence offered that any purchasers have been deceived. There is no similarity in advertising matter. Indeed, all that the plaintiff complains of in this connection is the defendant's use of the word "carburetor," but, as clearly ruled in Desmond's Appeal, 103 Pa. 126, the use of this word by the plaintiff in the combination "King Koal Karburetor" does not disentitle the defendant to its use in another combination, namely, "Master Coal Saving Carburetor." In short, even if the word "Carburetor," as used by the plaintiff, could constitute a lawful trade-mark (although the chancellor has found to the contrary), there is nothing in the evidence in this case to warrant an injunction against the defendant to prevent it from using the same word in another combination which clearly differentiates its product from that of the plaintiff.

As far as the picture of the "King Koal Karburetor" is concerned, for which the plaintiff also has a trade-mark, it is sufficient to say that "where the subject of a picture is so related to the article in connection with which it is used as to be merely descriptive thereof, it cannot be exclusively appropriated for that class of goods:" 38 Cyc., 730 (also pages 716-717).

The cut or representation which the plaintiff has registered as a trade-mark is substantially a picture of the device sold by him and in connection with which it is used. It is obvious that such a trade-mark cannot be monopolized so as to prevent another person lawfully selling an article of commerce from advertising his own product by the use of pictures representing that product. To this it may be added that the pictures of the two devices are sufficiently different to obviate the likelihood of any confusion on the part of intending purchasers.

To sum up, therefore, the chancellor has concluded that neither the word "Carburetor" (however spelled) nor the picture of the plaintiff's device constitutes a valid trade-mark in the sense of conferring upon the plaintiff the exclusive right to a monopoly in their use, the reason for this conclusion being that the device to which the trade-mark is applied is not in fact a carburetor, and, therefore, that the use of that name in connection with the device amounts to a deceptive misnomer, while the pictorial representation is nothing more than a graphic representation of the device itself. Even, however, if such trade-marks were valid, the employment by the defendant of its trade-marks and designations is so substantially and clearly different from the

ones used by the plaintiff that it is not possible, or at least likely, that any confusion can be created thereby.

For the reasons set forth in the foregoing discussion and upon the basis of the findings of fact and conclusions of law embodied herein, as above stated, the chancellor is of opinion that the plaintiff is not entitled to equitable relief, and, therefore, enters the following

### Decree.

And now, to wit, Jan. 24, 1922, it is ordered, adjudged and decreed as follows: 1. That the bill be dismissed. 2. That the plaintiff pay the costs of these proceedings.

The prothonotary will enter this decree *nisi*, and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.

NOTE.—The findings of fact and law submitted by the parties are omitted as being unnecessary to an understanding of the decision.